IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DION'E KAEO-TOMASELLI, | ) | CIVIL NO. 11-00670 LEK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JENNIFER BUTTS; EVALANI SOUZA, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS UNDER RULES 12(b) AND 12(f)**

Before the Court is pro se Defendants Jennifer Butts ("Butts") and Iwalani Souza's ("Souza," both collectively, "Defendants") Motion to Dismiss Under Rules 12(b) and 12(f) ("Motion"), filed on September 14, 2012.  Pro se Plaintiff Dion'e Kaeo-Tomaselli ("Plaintiff") filed her memorandum in opposition on October 5, 2012.  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendants' Motion is HEREBY DENIED for the reasons set forth below.

**BACKGROUND**

Plaintiff, who is presently incarcerated at the Women's Community Correctional Center ("WCCC"), filed a prisoner civil

rights complaint on November 1, 2011 against Joe Chavez, Pi'ikoi Recovery House for Woman ("Pi'ikoi House"), and Souza.  The Court screened the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1), dismissed Mr. Chavez and Pi'ikoi House, and granted leave to amend in a November 16, 2011 Order ("11/16/11 Order").  [Dkt. no. 5.]  Plaintiff filed her First Amended Complaint on December 9, 2011, naming Souza and TJ Mahoney and Associates (as the purported operator of Pi'ikoi House) as defendants.  In a February 2, 2012 Order, the Court dismissed TJ Mahoney and Associates with prejudice.  [Dkt. no. 16.]  Plaintiff was granted leave to amend, and filed her Second Amended Complaint against Defendants on August 8, 2012.

      The Second Amended Complaint alleges that Butts is the owner and/or operator of Pi'ikoi House, and that Souza is its resident manager.  [Second Amended Complaint at 1-2.]  Plaintiff alleges that Butts and Souza denied her access to public accommodations because of her gender, in violation of the Fair Housing Act.  She claims that, on August 10, 2010, Souza told WCCC Librarian Harry Fujigami that "she would not accept me into the Pi'ikoi Recovery House for Women because former inmates who currently live in the house told her that I was a sex change."  [Id. at 6.]  Plaintiff also alleges that Souza wrongly identified her "as a 'Sex Change' to my witness Mr. Fujigami after former female offenders informed her of false information due to my

gender because for all intent[s] and purposes I am a 'FEMALE'." [Id. at 7.]

Plaintiff alleges the following counts: (I) a 42 U.S.C. § 1983 claim against Butts for violations of equal protection and the Fair Housing Act; (II) a 42 U.S.C. § 1983 claim against Souza for violations of equal protection and the Fair Housing Act; and (III) a state law slander claim against Souza for "defamation of character" and violating her rights of gender identity and expression.

**I.  Defendants' Motion**

Defendants ask the Court to dismiss the claims in Plaintiff's Second Amended Complaint for failure to state a claim and for "lack of standing to enforce the complaint." [Mem. in Supp. of Motion at ¶¶ 7-8.] Defendants state that they could not have denied Plaintiff housing on August 10, 2010 because she was incarcerated at the time, and is still incarcerated two years later. According to Defendants:

> Plaintiff would not have been able to reside at
> the premises due to [P]laintiff's incarceration.
> We do not provide supervised release, so the
> Plaintiff would not have been able to be released
> to our facility.  We perform face to face
> interviews at the residence, which the Plaintiff
> never requested.  Telephone communication is a
> precursor to schedule said interviews.

[Id. at ¶ 1.]

Defendants also ask the Court to dismiss the case with prejudice "due to the fact that the plaintiff has a history of

3

filing nuisance complaints," which have been dismissed. [Id. at ¶ 8.]

## II. Memorandum in Opposition

Plaintiff asks the Court not to dismiss her claims and submits additional evidence in support of them. She argues that she was denied acceptance because Defendants incorrectly perceived her to be "a women with a male genitalia". [Mem. in Opp. at 1.] She also states in response that, "[i]f interviews are performed face to face then Defendant should have not had the conversation with my witness in regards to my gender." [Id.]

Plaintiff separately filed a letter verifying the factual allegations in the Second Amended Complaint, which is addressed to the Hawaii Civil Rights Commission and signed by Mr. Fujigami, and which includes a recitation of his conversation with Souza on August 10, 2010. [Pltf.'s Exh. A ("11/10/11 Letter"), filed 10/5/12 (dkt. no 46).]

## STANDARD

In ruling on a motion to dismiss Court must construe a pro se complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet – that the court must accept as true all of the allegations contained in the complaint – "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

## DISCUSSION

The Court previously held that, liberally construed, Plaintiff's allegations were sufficient to maintain claims for violation of 42 U.S.C. § 1983 and slander.  The 11/16/11 Order states, in pertinent part:

> **A.  Equal Protection**
>
> The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  This is "essentially a direction that all similarly situated persons should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  An Equal Protection

claim can be stated in one of two ways.  First, a plaintiff can allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  See Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing Washington v. Davis, 426 U.S. 229, 239-40 (1976)).  Alternatively, if the claims do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004).

Gender stereotyping is direct evidence of sex discrimination.  See Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) (discussing discrimination under Title VII).  The Ninth Circuit has also held that transgender individuals may state viable sex discrimination claims on the theory that the perpetrator was motivated by the victim's real or perceived failure to conform to socially-constructed gender norms.  See Schwenk v. Hartford, 204 F.3d 1187, 1201-02 (9th Cir. 2000) (discussing the Gender Motivated Violence Act, 42 U.S.C. § 13981(c)).

Plaintiff is currently incarcerated at WCCC, which is the Hawaii state prison for women.  It is unclear whether Plaintiff has undergone a sex change operation, or is a transsexual or transgender who has not yet done so.  Plaintiff is nonetheless being accommodated at WCCC, therefore, the court concludes that Plaintiff states an Equal Protection claim based on her real or perceived sex or gender.

**B.    Fair Housing Act**

The Fair Housing Act ("FHA") of 1968, also known as Title VIII, "protects against discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin[.]'"  Edwards v. Marin

6

> Park, Inc., 356 F.3d 1058, 1063 (9th Cir. 2004) (discussing pleading requirements pursuant to the FHA and explaining that the burden-shifting framework set forth in Price Waterhouse, 490 U.S. 228, applies to FHA claims); see also 42 U.S.C. § 3604(b). For the reasons set forth above, the court concludes that Plaintiff states a claim under the FHA.
>
> . . . .
>
> **E.   Slander**
>
> Plaintiff alleges that Souza slandered her when she told Plaintiff's unnamed witness that she believed Plaintiff "was a sex change." Compl. at 5. In Hawaii, a plaintiff must establish four elements to sustain a claim for defamation (slander): "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher (actual malice where the plaintiff is a public figured); and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Wilson v. Freitas, 214 P.3d 1110, 1118, 121 Haw. 120, 128 (Haw. App. 2009). Plaintiff has stated a claim for slander against Souza.

[11/16/11 Order at 5-7, 10 (some alterations in 11/16/11 Order) (footnote omitted).]

Defendants' Motion does not address the Court's previous ruling that Plaintiff properly stated both § 1983 and slander claims. Rather, Defendants provide additional facts and argument regarding matters that are not set forth in the Second Amended Complaint. In response, Plaintiff sought to bolster her allegations by submitting the 11/10/11 Letter, which also sets forth additional content not found in the Second Amended

7

Complaint.

The Court is not permitted to look beyond the Second Amended Complaint in deciding a motion to dismiss.  See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original) (citations omitted)).

Pursuant to Federal Rule of Civil Procedure 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Where the non-movant is proceeding pro se, the Court, if it sua sponte converts a motion to dismiss, must advise the non-movant of its intention to convert and ensure that he or she is "provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings."  Garaux v. Pulley, 739 F.2d 437, 439-40 (9th Cir. 1984).  For example, in Stratton v. Buck, the Ninth Circuit held that "when a district court will consider materials beyond the pleadings in ruling upon a defendant's motion to dismiss for failure to exhaust administrative remedies, the pro se prisoner plaintiff must receive a notice, similar to the notice described in Rand [v.

Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc)]." 697 F.3d 1004, (9th Cir. 2012) (footnote omitted). The Ninth Circuit noted, however, that the model notice appended to Rand must be tailored to specifically address a Rule 12(b) motion to dismiss for failure to exhaust. Id. at 1004 n.3.

In the instant case, the Court would have to provide Plaintiff with a similar notice specifically addressing the conversion of a motion to dismiss to a motion for summary judgment. The Court finds that it would be fundamentally unfair to Plaintiff for the Court to convert Defendants' Motion into one for summary judgment at this time. Plaintiff, proceeding pro se, was not given notice that the Motion could be viewed as one for summary judgment.

Moreover, the Court cannot convert the instant Motion to a motion for summary judgment because the additional submissions do not satisfy the requirements of Rule 56, and are not supported by declarations, affidavits, or other sworn testimony. A proper motion for summary judgment would include a concise statement of material facts, which would clearly identify for Plaintiff (and the Court) the facts Plaintiff must rebut.

The Court therefore DENIES the Motion without prejudice to Defendants later raising these arguments in a motion for

summary judgment.¹

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion to Dismiss Under Rules 12(b) and 12(f), filed on September 14, 2012, is HEREBY DENIED without prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 30, 2012.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DION'E KAEO-TOMASELLI V. JENNIFER BUTTS, ET AL; CIVIL NO. 11-00670 LEK-BMK; ORDER DENYING DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(b) AND 12(f)**

---

¹ To the extent Defendants ask the Court to strike the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) in the title of the Motion, the Court DENIES the request.  Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed.  Wailua Assocs. v. Aetna Cas. & Sur. Co., 183 F.R.D. 550, 554 (D. Hawai'i 1998).  A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation.  Id.  "Thus, courts will generally grant a motion to strike only when the moving party has proved that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Ill. Nat'l Ins. Co. v. Nordic PCL Const., Inc., Civil No. 11-00515 SOM/KSC, 2012 WL 1492399, at *19 (D. Hawai'i Apr. 26, 2012).  Defendants do not meet that standard here.