IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DION`E KAEO-TOMASELLI,           )  CIV. NO. 11-00670 LEK/BMK
                                )
               Plaintiff,       )
                                )  ORDER DENYING MOTION FOR
          vs.                   )  SUMMARY JUDGMENT
                                )
JENNIFER BUTTS, IWALANI SOUZA,  )
                                )
               Defendants.      )
_____ )

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Before the court is *pro se* Plaintiff Dion`e Kaeo-Tomaselli's Motion for Summary Judgment.[1]   ECF #60.   Plaintiff alleges that Defendants Jennifer Butts and Iwalani Souza, respectively the owner and manager of the Pi'ikoi Clean and Sober House for Women ("Pi'ikoi House"), violated the Fair Housing Act ("FHA") of 1968,[2] the Equal Protection Clause of the Fourteenth Amendment, and state law when they allegedly refused her request for accommodation at Pi'ikoi House on August 10, 2010.   Plaintiff seeks summary judgment on the allegations in her pleadings and documents she has filed showing that she is a hermaphrodite, is treated as a female by the State, and inquired about residing at Pi'ikoi House in 2010.   The court elects to decide this matter

---

[1] Plaintiff is incarcerated at the Women's Community Correctional Center ("WCCC"), and is proceeding in forma pauperis.

[2] Also known as Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.

without a hearing. *See* LR7.2(d). For the following reasons, Plaintiff's Motion is DENIED.

## I. <u>BACKGROUND</u>

This action is proceeding on Plaintiff's claims against Defendant Butts and Souza in the Second Amended Complaint ("SAC"). *See* ECF #27. Plaintiff alleges that, on August 10, 2010, the WCCC Librarian, Harry Fuchigami, telephoned Souza to inquire whether Plaintiff could reside at Piʻikoi House upon her release from prison. Plaintiff alleges that Souza told Fuchigami that she would not accept Plaintiff as a resident "because former inmates who currently live in the house told [Souza] that [Plaintiff] was a sex change." *Id.* at PageID #148. Plaintiff claims that Butts failed to properly train Souza and protect her from's Souza's alleged discrimination. Plaintiff seeks damages, continuing psychological treatment, and reformation of policies and procedures at the Piʻikoi House.

## II. <u>LEGAL STANDARD</u>

"[T]he moving party always bears the initial responsibility of informing the district court of the basis for its motion [for summary judgment], and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transportation Brokerate Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Put another way, "[her] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact, 99 F.R.D. 465, 487 (1984)); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("But - particularly where, as here, the moving party is also the party with the burden of proof on the issue - it is important to remember the non-moving party must produce its significant, probative evidence *only after* the movant has satisfied its burden of demonstrating there is no genuine dispute on any material fact.") (emphasis added).

Thus, on a summary judgment motion, the moving party bearing the ultimate burden of proof at trial must demonstrate

3

that there is no triable issue as to the matters alleged in its own pleadings. *Calderone*, 799 F.2d at 259.  This requires the moving party to establish beyond controversy every essential element of its claim or defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  The moving party's evidence is judged by the same standard of proof applicable at trial. *Anderson*, 477 U.S. at 252.

If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008).

### III.  **DISCUSSION**

In support of her Motion, Plaintiff provides:

(1) a verified letter from WCCC librarian, Harry Fuchigami, stating that Souza told him that: (a) Plaintiff must contact her personally to apply for residency at Pi'ikoi House; (b) current residents vote on new candidates for residence; (c) some current residents had informed Souza that they were uncomfortable accepting Plaintiff because they believed she had undergone a sex change operation; and (d) Souza believed that Plaintiff's request would likely be denied by the other residents. *See* Pl.'s Mot., Fuchigami Letter, ECF #60-4; Fuchigami Aff., ECF #64-1.

4

(2) a letter from her attorney, Deputy Public Defender E. Edward Aquino, Esq., stating that Plaintiff was born a hermaphrodite and this has caused problems for Plaintiff during her incarceration. *Id.*, Aquino Letter, ECF #60-5, ECF #60-6.

(3) a copy of her Hawaii Identification Certificate, listing her as female. *Id.* ECF #60-1; ECF #60-2.

(4) psychiatric and medical progress notes from the Hawaii Department of Public Safety, stating that Plaintiff's penis is "so atrophied [it] is more like an enlarged clitoris." Based on this, Plaintiff was assigned to the Women's Community Correctional Center, as a female inmate. *Id.* ECF #60-3.

(5) various documents showing that Plaintiff wrote Souza on July 18, 2010, detailing her desire to reside at Pi'ikoi House, filed a complaint with the Hawaii Civil Rights Commission and contacted the U.S. Department of Justice regarding her housing discrimination claims. ECF #60-4, #62-2, #62-3, #62-5.

## A.   Genuine Issues of Fact Remain Under the FHA

The FHA "protects against discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin[.]'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir. 2004); 42 U.S.C. § 3604(b).  To have standing to sue under the FHA, a party must be an "aggrieved person," which is defined as one who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that [he or she] will be injured by a discriminatory practice *that is about to occur*."  42 U.S.C. § 3602(i) (emphasis added).

//

//

1.   *Standing to Sue*

Although the Supreme Court recognizes a liberal
standing requirement for actions brought under the FHA, a
plaintiff must still show an actual injury traceable to a
defendant's conduct; only then is she entitled to seek redress
for that harm.  *See Gladstone Realtors v. Vill. of Bellwood*, 441
U.S. 91, 103 n.9 (1979); *San Pedro Hotel Co., Inc. v. City of Los
Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).  Thus, to establish
that she is an "aggrieved person," Plaintiff must demonstrate
that she suffered a concrete injury in fact or one that is actual
and imminent; that such injury is fairly traceable to Defendants'
allegedly illegal actions; and that it is likely that such injury
will be redressed by a favorable decision.  *See Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiff fails to demonstrate by a preponderance of
the evidence that she suffered any actual injury traceable to
Souza's alleged statements to Fuchigami.  That is, Plaintiff
submits no evidence showing that she was eligible to reside at
Pi'ikoi House and was denied residence on the basis of her sex or
perceived gender, and thus, was subjected to an actual injury by
an *imminent* discriminatory housing practice.

Fuchigami's conversation with Souza does not prove that
Plaintiff actually applied for residence at Pi'ikoi house, or
personally spoke with Souza as required by Pi'ikoi House's rules,

6

and was refused.  Fuchigami's letter shows only that Souza allegedly told him that Plaintiff must contact her personally, Pi'ikoi House's residents vote on who is accepted, and Souza believed the current residents would not accept Plaintiff based on their belief that she had a sex change operation.  Souza may deny Fuchigami's account, or produce evidence that Pi'ikoi House management can overrule resident votes that are deemed illegal or against policy.  Either possibility would create a genuine issue of fact.

More importantly, Plaintiff's documents show that Plaintiff was incarcerated in July-August 2010, when she wrote Souza and when Fuchigami contacted Souza, was incarcerated while she pursued her claims with the Hawaii Civil Rights Commission and others, and remains incarcerated now.[3]  If Plaintiff was incarcerated when she and Fuchigami contacted Souza, and was not eligible for imminent release, then even accepting her claims as true, Plaintiff was not eligible for residence at Pi'ikoi House during the past three years.  Plaintiff does not show any actual injury based on an illegal housing decision that occurred or was "about to occur," thus, that there is *no* genuine issue of

---

[3] Publicly available incarceration records show that Plaintiff's maximum term does not expire until November 25, 2018. *See* Hawaii SAVIN https://www.vinelink.com.

material fact regarding her standing to sue.[4]  *See* 42 U.S.C.
§ 3602(i).

### 2.   *The Roommate Exception to Liability Under the FHA*

It appears that Pi'ikoi House is a group home, that is,
a shared living accommodation where residents share rooms and/or
living quarters and vote on accepting new residents.  *See* Pl.'s
Exh., "Women's Clean & Sober House Listing," ECF #62-1 (listing
Pi'ikoi House and advising those seeking "a clean and sober
house," to inquire about the "the cost [and] meet your possible
room mates (how many live there?, how many in a room?");
Fuchigami Letter, ECF #64-2 (stating, "[Souza] was very cordial
and explained to me that the residents of her clean and sober
house take a vote to see if a candidate should be accepted into
the house.").

The Ninth Circuit Court of Appeals has recently held
that, under the FHA, a "'dwelling' does not include shared living
units . . . [and] excludes roommate selection from the reach of
the FHA." *Fair Housing Council of San Fernando Valley v.
Roommate.com, LLC*, 666 F.3d 1216, 1222 (9th Cir. 2012).  In so
holding, the Ninth Circuit stated, "choosing a roommate
implicates significant privacy and safety considerations," and

---

[4] Plaintiff's other exhibits support her contention that she
is a hermaphrodite and is considered a female by the State.  They
do not, however, conclusively show that Plaintiff was actually
eligible to reside at Pi'ikoi House within the past three years,
and was improperly denied such residence.

should not be subject to government regulation.  *Id.* at 1221
(stating that a woman may consider modesty or security concerns
when seeking a roommate, just as "[a]n orthodox Jew may want a
roommate with similar beliefs and dietary restrictions," and
should have the unfettered ability to do so).  The court
explained that, "[b]ecause we find that the FHA doesn't apply to
the sharing of living units, it follows that it's not unlawful to
discriminate in selecting a roommate."  *Id.* at 1222.

     While this court held that Plaintiff *states a claim*
under the FHA, that determination does not equate to a finding
that Plaintiff has *proved* her claim.  The record is inadequate
for the court to make a determination on whether Plaintiff has
standing to sue, or whether Pi'ikoi House is a shared living
accommodation, or on the overall merits of Plaintiff's claims
under the FHA at this time.  Nonetheless, Plaintiff fails to meet
her burden of showing that there is no genuine issue of material
facts regarding her FHA claims.  Consequently, the burden does
not shift to Defendants, the non-moving parties, to produce
contrary evidence.  Plaintiff's Motion for Summary Judgment is
DENIED on her FHA claims.

## B.   Plaintiff's § 1983 Claims

     Plaintiff seeks relief under 42 U.S.C. § 1983, alleging
that Defendants violated her rights to equal protection under the
law.  To succeed on her § 1983 claim, Plaintiff must show that

the conduct at issue "was committed by a person acting under the color of state law" and that the "conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 129 S. Ct. 2431 (2009).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotations omitted).

1. ***No Evidence That Defendants Acted Under Color of State Law***

A person acts under color of state law if he or she "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326(1941)). "Private parties are not generally acting under state law." *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991).

Plaintiff submits no evidence that Butts and Souza, the owner and resident manager of an apparently privately owned and

operated group home, were acting under color of state law.  Thus, a genuine issue of material facts exists regarding Defendants' status as state actors.

### 2.   *No Similarly Situated Individuals Named*

An equal protection claim may be established in two ways; the first requires a plaintiff to "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff puts forth no evidence that her status as a hermaphrodite, or transgender female, qualifies her as a member of a protected class.  Nor has this court discovered any cases in which transgendered individuals constitute a "suspect" class.  *See, e.g.*, *Braninburg v. Coalinga State Hosp*, 2012 WL 391190, *8 (E.D. Cal., Sep. 7, 2012); *Jamison v. Davue*, 2012 WL 996383, *3 (E.D. Cal. Mar. 21, 2012) (holding that transgender individuals do not constitute a suspect class).

Alternatively, if the claims do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).  To prevail

under this theory, a plaintiff must show that: (1) she is a member of an identifiable class; (2) she was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Vill. of Willowbrook,* 528 U.S. at 564. Plaintiff sets forth no evidence supporting a finding that other similarly situated individuals were treated differently from her and that there is no rational basis for such differential treatment. Thus, Plaintiff fails to show that there is no genuine issue of material fact regarding her equal protection claims. Plaintiff's Motion is DENIED on her equal protection claims and Defendants need not respond.

### 3. *Defendant Butts is Dismissed*

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). Thus, the court retains a continuing duty to screen a prisoner's complaint and must dismiss a complaint or portion thereof if it determines that a claim is frivolous, malicious, or fails to state a claim. *Id.; c.f., Lopez v. Smith*, 203 F.3d 1122, 1126 n.6 (9th Cir.2000) (*en banc*) (holding that a court is not relieved of its duty to screen a complaint under the Prison

12

Litigation Reform Act of 1996 ("PLRA"), even after a motion to dismiss is brought).

Plaintiff alleges that Butts "failed to protect [her] from" Souza's discriminatory acts by failing to train Souza, but provides no other facts linking Butts to Souza's alleged comments and supposed denial of housing. *See* SAC, ECF #27 PageID #147. That is, Plaintiff makes no allegations that Butts, knew of, directed, or played any role in Souza's alleged decision to deny Plaintiff housing at Pi'ikoi House. Plaintiff appears to name Butts solely because of her position as owner of Pi'ikoi House.

There is no *respondeat superior* liability under § 1983, i.e., there is no liability under the theory that one is responsible for the actions or omissions of an employee. Liability under § 1983 arises only upon a showing of personal participation by the defendant, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), and may be imposed only if a plaintiff can show that the defendant proximately caused a deprivation of a federally protected right and links that defendant to the claim, *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained that purposeful discrimination, as alleged here, requires a plaintiff to "plead and prove that the defendant acted with discriminatory purpose." *Id.* at 676; *see also Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011). "Proving purposeful

discrimination requires showing 'more than intent as volition or intent as awareness of consequences'; the plaintiff must show that the decisionmaker acted because of his action's adverse effects, not merely in spite of them." *Starr*, 652 F.3d at 1206 (quoting *Iqbal*, 556 U.S. at 676) (internal quotation marks omitted).  Holding a supervisor liable for unconstitutional discrimination if he or she did not have a discriminatory purpose "would be equivalent to finding them vicariously liable for their subordinates' violation," which is not allowed under § 1983. *Starr*, 652 F.3d at 1206.  Even alleging a supervisor's "awareness of the discriminatory effects of his or her actions or inaction does not state a claim of unconstitutional discrimination," and Plaintiff does not so allege.  *Id.*  Nothing within the SAC shows that Butts was aware of, directed, participated in, or acquiesced in Souza's alleged statements or actions.

Plaintiff fails to allege sufficient facts against Butts to state a claim for purposeful discrimination and claims against her are DISMISSED.  Plaintiff may seek to amend only if she can allege sufficient, plausible facts showing that Butts participated in, knew of, or directed Souza's allegedly discriminatory actions.

//

//

14

### 4. *State Law Claims*

Because Plaintiff's state law claims are before the court on discretionary, supplemental jurisdiction, the court will not consider them until jurisdiction for Plaintiff's federal claims has been conclusively determined.  *See Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639-540 (2009) ("With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise.  A district courts decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.") (citations omitted).

## IV. <u>CONCLUSION</u>

Plaintiff provides no evidence establishing beyond doubt the elements of her claim that Defendants discriminated against her on the basis of her sex and/or gender.  Plaintiff neither directs the court to evidence entitling her to a directed verdict if that evidence went uncontroverted at trial, nor establishes beyond controversy every essential element in her claims.

Summary judgment is inappropriate, and Defendants are not required to oppose this Motion or to produce any evidence controverting Plaintiff's arguments.  Plaintiff's Motion for

Summary Judgment is DENIED.  Claims against Defendant Butts are

DISMISSED, as discussed above.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Kaeo-Tomaselli v. Butts, et al.*, No. 1:11-cv-00459 LEK/KSC; ORDER DENYING MOTION FOR
SUMMARY JUDGMENT;G:\docs\prose attys\Ords\DMP\2013\Tomaselli 11-670 lek (dny msj).wpd