IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DION`E KAEO-TOMASELLI, | ) CIV. NO. 11-00670 LEK/BMK |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' |
| vs. | ) MOTION FOR SUMMARY JUDGMENT |
| JENNIFER BUTTS, IWALANI SOUZA, | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants Jennifer Butts' and Iwalani Souza's Motion for Summary Judgment on All Counts (Counts I, II, and III) of Plaintiff Dion`e Kaeo-Tomaselli's Second Amended Complaint. ECF No. 79. Plaintiff has filed an Opposition, ECF No. 82, and Defendants have filed a Reply, ECF No. 88. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.[1]

## I. BACKGROUND

This action is proceeding on Plaintiff's claims in the Second Amended Complaint ("SAC"). *See* ECF No. 27. Plaintiff alleges that Butts and Souza, respectively the owner and ex-manager of the Pi`ikoi Clean and Sober House for Women ("Pi`ikoi House"), violated the Fair Housing Act ("FHA") of 1968,[2] the

---

[1] The court exercises its discretion to decide this matter without a hearing. *See* Local Rule LR7.2(d).

[2] Also known as Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.

Equal Protection Clause of the Fourteenth Amendment, and state law when they allegedly refused her request for residence at Pi`ikoi House on August 10, 2010.

Plaintiff was born a hermaphrodite, carries a Hawaii identification certificate that identifies her as female, is considered a female by the Hawaii Department of Public Safety, and states that, although she has never had a sex change operation, she has had "corrective surgery." *See* Pl. Exs., ECF Nos. 60-1 through 60-4. Plaintiff alleges that, on August 10, 2010, the Women's Community Correctional Center ("WCCC") Librarian, Harry Fuchigami, telephoned Souza to inquire whether Plaintiff could reside at Pi'ikoi House upon her release from prison. Plaintiff says that Souza told Fuchigami that she would not accept Plaintiff as a resident "because former inmates who currently live in the house told [Souza] that [Plaintiff] was a sex change." *Id.* at PageID #148. Plaintiff claims that Butts failed to properly train Souza or protect Plaintiff from Souza's alleged discrimination and slander. Plaintiff seeks damages, continuing psychological treatment, and reformation of policies and procedures at Pi`ikoi House.

On January 31, 2013, the court denied Plaintiff's motion for summary judgment and dismissed her claims against Defendant Butts for Plaintiff's failure to state a cognizable claim. *See* Order, ECF No. 68. Plaintiff was given an

opportunity to amend her claims against Butts to allege "sufficient, plausible facts showing that Butts participated in, knew of, or directed Souza's allegedly discriminatory actions." *Id.*, PageID #331.  Plaintiff failed to amend and claims against Butts remain dismissed.

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *accord Addisu*, 198 F.3d at

1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion."). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

### III.  DISCUSSION

Defendants argue that Plaintiff (1) never formally applied for residence at Pi`ikoi House, therefore, they never denied an application for residence from her; (2) lacks standing

to sue because she was ineligible to reside at Pi`ikoi House when Fuchigami inquired, based on her incarceration; (3) cannot state a claim under the FHA because Pi`ikoi House is subject to the "roommate exception"; and(4) cannot state a discrimination claim against them under § 1983 because they are not state actors and she is not a member of a suspect class.  Based on these same arguments, Defendants ask the court to retain jurisdiction and summarily dismiss Plaintiff's state law slander claim.

Plaintiff does not rebut Defendants' arguments except to say that she was eligible for a reduction in her minimum term when she inquired about residence at Pi`ikoi House.  *See* Opp'n, ECF No. 82.

**A.   Plaintiff's FHA Claims**

The FHA "protects against discrimination 'in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin[.]'"  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir. 2004); 42 U.S.C. § 3604(b).  To have standing to sue under the FHA, a party must be an "aggrieved person," who is defined as one who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that [he or she] will be injured by a discriminatory practice *that is about to occur*."  42 U.S.C. § 3602(i) (emphasis added).

### *1.   Plaintiff Lacked Standing to Sue*

Although the Supreme Court recognizes a liberal standing requirement for actions brought under the FHA, a plaintiff must still show an actual injury traceable to a defendant's conduct; only then is she entitled to seek redress for that harm.  *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979); *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).  To establish that she is an "aggrieved person" with standing to sue under the FHA, Plaintiff must demonstrate that she suffered a concrete injury in fact or one that is actual and imminent; that such injury is fairly traceable to Defendants' allegedly illegal actions; and that it is likely that such injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiff does not deny that she was incarcerated when Mr. Fuchigami inquired about Plaintiff's possible future housing at Pi`ikoi House.  Rather, she asserts only that she was eligible for *consideration* of a reduction of her minimum term of sentence.  While this may be true, the record shows that Plaintiff was incarcerated when Fuchigami sought information from Pi`ikoi House on Plaintiff's behalf in 2010, incarcerated when she filed this suit, and remained incarcerated for nearly two years thereafter, until she was released in June 2013.  Plaintiff was not,

therefore, subjected to an actual or *imminent* discriminatory housing practice, because she was ineligible to reside at Pi`ikoi House when Fuchigami inquired.  Plaintiff cannot show any actual injury based on an illegal housing decision that occurred or was "about to occur," and there is no genuine issue of material fact that she lacked standing to sue.  *See* 42 U.S.C. § 3602(i).

### 2. *The Roommate Exception to Liability Under the FHA*

Moreover, under the FHA, a "'dwelling' does not include shared living units . . . [and] excludes roommate selection from the reach of the FHA."  *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1222 (9th Cir. 2012).  "[C]hoosing a roommate implicates significant privacy and safety considerations," and should not be subject to government regulation.  *Id.* at 1221 (stating that a woman may consider modesty or security concerns when seeking a roommate, just as "[a]n orthodox Jew may want a roommate with similar beliefs and dietary restrictions," and should have the unfettered ability to do so).  Because the FHA does not apply to shared living units, it is not unlawful to discriminate when selecting a roommate.  *Id.* at 1222.

It is undisputed that Pi'ikoi House is a privately owned group home where residents share rooms and/or living quarters and vote on accepting new residents.  The FHA's roommate exception therefore applies to Pi`ikoi House and Plaintiff fails

8

to state a claim under the FHA regarding any putative decision to deny her residence at Pi`ikoi House based on her transgender status.  Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's FHA claims.

**B.    Plaintiff's § 1983 Claims**

Plaintiff seeks relief under 42 U.S.C. § 1983, alleging that Defendants violated the Equal Protection Clause of the Fourteenth Amendment.  To succeed on this claim, Plaintiff must show that the conduct at issue "was committed by a person acting under the color of state law" and that the "conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 129 S. Ct. 2431 (2009).

*1.    Defendants Are Not State Actors*

The court begins with the presumption that private conduct does not constitute state action.  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999); *Reiner v. Mental Health Kokua*, No. 10-00340 DAE; 2011 WL 322535, *5 (D. Haw. Jan. 31, 2011).  "Private parties are not generally acting under state law."  *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).  A person only acts under color of state law if he or she "exercise[s] power 'possessed by virtue of state law and made

possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

The burden is on the individual alleging that a private party infringed his or her constitutional rights to plead and show that the private party's conduct constitutes state action. *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996). "Constitutional standards should be invoked only 'when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'" *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (quotations omitted)).

A private party may act under color of state law when: (1) performing a traditionally and exclusive public function; (2) acting jointly with the state government; (3) acting under governmental compulsion or coercion; and (4) there is a governmental nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Additionally, a "private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984) (citation omitted). These factors are not exclusive, but "[s]atisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists."

*Kirtley*, 326 F.3d at 1092. The central question is whether the alleged violation of constitutional rights is fairly attributable to state government. *Id.* at 1096.

Courts are undecided on whether employees of a private halfway house may be considered state actors. *Compare Kelly v. N.J. Dep't. of Corr.*, 2012 WL 6203691, at *6 (D.N.J. Dec. 11, 2012) (finding plaintiff failed to allege any facts showing defendants functioned as state actors); *Allen v. Dawson*, 2012 WL 2878031, at *1 (D. Colo. Jul. 12, 2012) (same); *McWhirt v. Putnam*, 2008 WL 695384, at *6 (W.D. Mo. Mar. 12, 2008)(finding employees of a private halfway house were not state actors); *Phillips v. Goord*, 2009 WL 909593, at *3 (W.D.N.Y. Apr. 1, 2009) (finding no allegations against non-profit halfway house supporting state action); *with Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, (2001) (suggesting that, although federal prisoner housed in private halfway house had no implied right of action under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), a state prisoner may); *Aladimi v. Alvis House/Cope Center*, 2012 WL 726852 (S.D. Ohio Mar. 6, 2012) (finding that the operation of a halfway house that houses prisoners for pre-release programming is "somewhat analogous" to the operation of a prison, a "historically governmental function").

11

Here, Plaintiff pleads no facts and submits no evidence that Butts and Souza were acting under color of state law. She does not show that Pi`ikoi House performed a traditional and exclusively governmental function by providing transitional housing for released prisoners. She details no contractual relationship between the State and Pi`ikoi House. She does not describe the nature of the services provided at Pi`ikoi House or rebut Defendants' statement that it housed released inmates only -- a category she concedes did not apply to her. Plaintiff does not allege Butts or Souza willfully participated, conspired with, or were coerced by state officials, or demonstrate that there is a close nexus between them and the State and that this nexus forms the basis of her claims. Plaintiff therefore fails to pass the threshold question of whether Defendants are state actors subject to suit under § 1983.

### 2. *Failure to State An Equal Protection Claim*

Assuming, *arguendo*, that Defendants were state actors, Plaintiff fails to state a cognizable claim against them under the Equal Protection Clause. Souza's single comment that she would not be able to accommodate Plaintiff at Pi`ikoi House because she is "a sex change," simply does not give rise to an equal protection violation. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (holding that "stray remarks are insufficient to establish discrimination"); *Williams v.*

*Bramer*, 180 F.3d. 699, 706 (5th Cir. 1999) (stating the "use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation"). It is well-established that verbal harassment, abuse, and threats (including those sexual in nature), without more, are insufficient to state an equal protection violation. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Freeman v. Arpaio*, 125 F.3d 732 (9th Cir. 1997) (abusive language directed at prisoner's religious background and ethnic background not actionable), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). *See also Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (holding that derogatory racial epithets alone do not violate the Fourteenth Amendment). Defendants' Motion for Summary Judgment is Granted as to Plaintiff's equal protection claim.

### IV. SUPPLEMENTAL JURISDICTION

Defendants urge the court to retain jurisdiction over Plaintiff's state law slander claim, but provide no argument supporting their contention that this claim should be dismissed. When all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law

claims. 28 U.S.C. § 1367.[3] "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *See Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639-540 (2009) (citations omitted).

Plaintiff's federal claims are being dismissed well before trial and this court declines to exercise supplemental jurisdiction over Plaintiff's state law slander claim. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (holding that no explanation is required when declining jurisdiction under § 1367(c)(3)).

---

[3] Section § 1367(c) provides:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

## V. CONCLUSION

Defendants' Motion for Summary judgment is GRANTED as to Plaintiff's federal claims.  The court declines to exercise supplemental jurisdiction over the Plaintiff's remaining state law claim.  The Clerk is DIRECTED to enter judgment and terminate this action.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 17, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Kaeo-Tomaselli v. Butts, et al.*, No. 1:11-cv-00459 LEK/KSC;G:\docs\prose attys\Ords\DMP\2013\Tomaselli 11-670 lek (Grant MSJ).wpd